**[J-44-2019] [OAJC:Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 57 MAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court at No. 266 MDA 2017 dated |
| | : | April 12, 2018 Vacating the |
| v. | : | Judgment of Sentence dated |
| | : | January 13, 2016 of the |
| | : | Lackawanna County Court of |
| PATRICK TIGHE, | : | Common Pleas, Criminal Division, at |
| | : | No. CP-35-CR-0001297-2012 and |
| Appellant | : | Remanding for resentencing. |
| | : | |
| | : | ARGUED: May 14, 2019 |

## CONCURRING OPINION

**JUSTICE MUNDY**                                              **DECIDED: February 19, 2020**

I concur in the result. Additionally, I agree with the expressions of Chief Justice Saylor and Justice Wecht in their separate opinions, and would not affirm on the basis of forfeiture under the right-for-any-reason doctrine. Relative to the issues accepted for review, whose merits have not been reached, I note the opinion announcing the judgment of the court and the responsive opinions implicitly accept that establishing a record of a witness' emotional trauma requires expert testimony before restrictions may be placed on a self-represented defendant's cross-examination, and because such record is absent conclude we should not address the issue. Until this Court definitively extends *Maryland v. Craig*, 497 U.S. 836 (1990) to limiting self-representation, and sets forth a test for determining what evidence the Commonwealth must demonstrate to preclude the defendant from being entitled to personally cross-examine the victim, such conclusions are premature.

The lower court in this matter held, as matter of first impression, that the principles announced in *Craig*, "which permitted a procedure that limited the Confrontation Clause rights [of a *pro se* defendant] due to the countervailing interests of the victim when the procedure otherwise preserved the reliability of the cross-examination[,]" was "a permissible restriction on the right of self-representation." *Commonwealth v. Tighe*, 184 A.3d 560 (Pa. Super. 2018). In so doing, the court addressed Appellant's concern that his right to self-representation cannot be limited, but did not opine on the degree of emotional trauma that must be demonstrated to warrant limiting that right.[1] Nevertheless, Appellant has asked this Court to determine "whether it was sufficiently established that the minor victim would suffer emotional trauma making her unable to reasonably communicate if questioned by the accused during trial making it necessary to deny and/or limit the right to self-representation?" *Commonwealth v. Tighe*, 195 A.3d 850 (Pa. 2018) (*per curiam*). Appellant's premature leap to the sufficiency of the victim's emotional trauma, in the absence of a clear test, has resulted in today's splintered decision.

As a final note, assuming emotional trauma must be established, I believe the instant record supports such a finding. One of the conditions of Appellant's bail was to have no contact with J.E. J.E. testified at the bail hearing that she was unaware Appellant had been released on bail until she received a phone call from him where he pleaded with her "Come on. Why [are] you doing this to me? I didn't hurt you. Please don't put me in jail for life. We can make it right baby[.]" N.T., 6/4/13, at 42. She further testified, "I was scared. I was shocked. I didn't know what to think because I wasn't notified that he was out. I felt like I was scared he would find me. I didn't know if he was already trying to find

---

[1] The court noted in a footnote, "[w]hether the Commonwealth sufficiently established as a matter of degree that J.E. would suffer emotional trauma as contemplated by *Craig* is not before us, as Appellant avers that his right to act as counsel precludes any limitation upon his right to represent himself, regardless of any trauma to the witness." *Tighe* 184 A.3d at 571, n.8.

me. So that's when I told my foster mom and contacted the police . . . I felt like I was in danger." *Id.* at 47. Without an established test to guide it, the trial court exercised its discretion to balance the victim's right to be free from being questioned by Appellant, and Appellant's right to self-representation. It may have been prudent to hold a subsequent hearing, but in the absence of a clear directive, it is inappropriate to fault the trial court's handling of the matter. For these reasons, I concur in the result.